IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PATRICIA K. HASTINGS, | ) | |
| | ) | |
| Plaintiff, | ) | 8:10CV74 |
| | ) | |
| v. | ) | |
| | ) | |
| PAPILLION-LAVISTA SCHOOL DISTRICT, School District No. 27, | ) | MEMORANDUM AND ORDER |
| | ) | |
| Defendant. | ) | |

This matter is before the court on the defendant's motion for summary judgment, Filing No. 19.¹ This is an action for discrimination in employment. The plaintiff alleges that she was terminated from her position as a special education paraeducator by Papillion-La Vista School District ('the School District") in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*; the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*; and the Nebraska Age discrimination in Employment Act, Neb. Rev. Stat. § 48-1001 *et seq.*

The defendant argues that uncontroverted facts show that the plaintiff cannot establish that she was disabled as that term was defined at the time she was terminated and that she has not presented evidence sufficient to establish a prima facie case of age discrimination.

---

¹Also pending is the defendant's motion to strike the plaintiff's brief in response to the motion as untimely, Filing No. 28. The court finds that motion should be denied. There has been no showing of prejudice as a result of the late filing.

I.  BACKGROUND

    A.  Facts

The parties agree on the following facts.[2] The plaintiff, Patricia Hastings, was employed by the School District as a paraeducator at Papillion-LaVista High School ("PLHS") since 2000. She was a one-on-one special education paraeducator for medically fragile students. Her job primarily involved working with students. At her annual physical in November of 2008, Hastings was given a temporary standing restriction. She then spoke to the human resources director, Ms. Mimi Goings, about it. Goings told Hastings that she could either transfer to another school or take sick leave until the restriction was lifted, but could not return to her job with the restriction. Hastings also told Goings at the meeting that she would need to take time off for doctor's appointments in the future.

Hastings asked her doctor to lift the restriction the following day. Ms. Hastings presented PLHS with a second doctor's note dated November 14, 2008, releasing her from her standing restriction. She missed only one day of work due to the standing restriction and returned to work in her job as a special education paraeducator at PLHS. Ms. Goings heard nothing more from Ms. Hastings or her doctor regarding her standing restriction or any health conditions or concerns after this.

The School District was aware that Ms. Hastings had been diagnosed with cancer in 2004 and 2006. She states that the School District "was excellent" in accommodating her while she was being treated for cancer. The plaintiff acknowledges that her employee

---

[2]These facts are gleaned from the parties' respective statements of undisputed facts in their briefs in support of and opposition to the motion. *See* Filing No. 20, defendant's brief at 1-13; Filing No. 25, plaintiff's brief in opposition at 1-19.

handbook mentions, and she was aware, that time off must be preapproved by an administrator.

In Ms. Goings' position as Director of Human Resources, she received regular absence and leave reports regarding paraeducators. Ms. Goings expected to see Ms. Hastings' name on these reports after their November communications in light of Ms. Hastings' statement that she would need to miss work for doctor's appointments. Ms. Goings asked Kathy Weaver, a special education teacher and head of the special education department at PLHS, whether Ms. Hastings had missed work, and Ms. Weaver stated that she had. Weaver then forwarded to Goings e-mails that Hastings had sent notifying the teachers of absences for three doctor's appointments in November. Ms. Goings then compared Hastings' November 2008 time sheet and discovered that she had marked down that she had worked full days each day that month except for two days—November 13, which was the day she missed because of her standing restriction, and November 14, a preapproved personal day. There was no indication on her time sheet that she had missed any time for her doctor's appointments.

On December 10, 2008, Ms. Goings called a meeting with Principal Glover and Ms. Hastings to determine if Ms. Hastings had violated the district's policies regarding leave time and time sheets. Ms. Hastings admitted that she had failed to record time that she was absent on her time sheets and that she did not get preapproval from an administrator before taking the time off. Ms. Goings terminated her employment for falsifying her time sheet, effective December 10, 2010. Ms. Weaver is not an administrator and does not have the authority to approve changes in hours for paraeducators. After Ms. Hastings' termination, her position was filled by a forty-five-year-old.

In opposition to the defendant's motion, Hastings has presented evidence that shows that she had other medical conditions in addition to foot pain.  Filing No. 21, Index of Evid., Ex. 1, Deposition of Patricia Hastings ("Hastings Dep.") at 54, 62-63.  She was treated for breast cancer in 2004 and for ovarian cancer in 2006.  *Id.* at 107.  There is evidence that other para-professionals with restrictions similar to Hastings' standing restriction were accommodated at work.  *Id.*, Ex. 4, Deposition of James Glover ("Glover Dep.") at 25.  Principal Glover testified that he believed that Pat Hastings was playing a game and therefore did not deserve an accommodation.  *Id.* at 27.  Mimi Goings testified she had no idea of what other employees were doing or not doing with regard to the attendance policy at the high school at the time she and Hastings discussed the standing restriction.  *Id.*, Ex. 5, Deposition of Mimi Goings ("Goings Dep.") at 22-23.  Goings testified that she could not remember any para-professional employee being terminated for any reason other than not showing up for work.  *Id.* at 64.

Elaine Hansen, the principal's secretary, testified that Principal Glover was not strict with leave policies.  *Id.*, Ex. 2, Deposition of Elaine Hansen ("Hansen Dep.") at 22-23.  Kathy Weaver, a special education teacher and head of the department, testified that she was aware that the plaintiff had appointments and would come and go.  *Id.*, Ex. 3 ("Weaver Dep.") at 25-26.  Tammy Jean Grate, the school secretary, testified that employees were allowed to make up time that they missed in 2008.  *Id.*, Ex. 1, Deposition of Tammy Jean Grate ("Grate Dep.") at 11-12.  Grate kept track of absences and in 2008, Hastings would come in and sign out when she was going to an appointment.  *Id.* at 21-22.  It was Tammy Jean Grate's responsibility to check the time sheets at the end of the month when they were turned in and compare them to her calendar.  *Id.* at 14-15.  If there was a discrepancy

in her examination of the calendar and the time sheets, she would take it to Elaine Hansen and Hansen would make the appropriate changes. *Id.* at 15-16.

Elaine Hansen, the principal's secretary, was told that she had authority to allow people to take time off, but needed to know when the employees were going to make up their time by staying late or coming in early. *Id.*, Hansen Dep. at 13. Pat Hastings came to Hansen on several occasions stating that she needed time off and Ms. Hansen, in Mr. Glover's absence, told her it was okay. *Id.* at 11.

Hastings testified that Kathy Weaver told her when she was undergoing cancer treatment in the past not to worry about taking time off for doctor's appointments. Filing No. 21, Ex 1, Hastings Dep. at 19. Hastings testified that she made up the time by coming to work early in the mornings. *Id.* at 65. Kathy Weaver was not aware that the policy that employees could not make up time in that manner changed. Filing No. 26, Index of Evid., Ex. 3, Weaver Dep. at 26. To Elaine Hansen's recollection, Mr. Glover never disciplined anyone including Pat Hastings over the attendance policy. *Id.*, Ex. 2, Hansen Dep. at 23. The hours of work for para-professionals varied depending on the para-professional and on the student. *Id.*, Ex. 3, Weaver Dep at 17.

Kathy Weaver was aware that Pat Hastings was taking off time in the Fall of 2008. *Id.* at 20. Principal Glover was also aware that she had doctor's appointments and was missing work. *Id.*, Glover Dep. at 13. Weaver testified that in 2008 she was "under the impression that Pat's cancer had returned and she was seeing a doctor and having tests done and doctor visits done to see if the cancer had returned." *Id.*, Ex. 3, Weaver Dep. at 23. Mimi Goings was aware of that Pat Hastings was making up her missed time by showing up early in the morning. *Id.*, Ex. 5, Goings Dep. at 54. Principal Glover stated that

5

it had been a policy of his throughout his career as principal at the high school to permit employees to make up time that they had missed. *Id.*, Ex. 4, Glover Dep. at 34.

B. Law

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp., Inc.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

The burden of establishing that no genuine issue of material fact exists is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Singletary v. Mo. Dep't of Corr.*, 423 F.3d 886, 890 (8th Cir. 2005) (stating that "[t]he moving party bears the burden of showing both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law"). Therefore, if the moving party does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987). Once the moving party has met its burden, the nonmoving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *Singletary*, 423 F.3d at 890.

6

The Eighth Circuit Court of Appeals has "repeatedly emphasized that 'summary judgment should be used sparingly in the context of employment discrimination and/or retaliation cases where direct evidence of intent is often difficult or impossible to obtain.'" *Torgerson v. City of Rochester*, 605 F.3d 584, 593 (8th Cir. 2010) (quoting *Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1117 (8th Cir. 2006)); *see also Peterson v. Scott County*, 406 F.3d 515, 520 (8th Cir. 2005) (noting that "[s]ummary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference"); *Wheeler v. Aventis Pharm.*, 360 F.3d 853, 857 (8th Cir. 2004) (stating that "in employment discrimination cases, because intent is inevitably the central issue, we apply the [summary judgment] standard with caution."); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1156 (8th Cir. 1999) (stating that "[s]ummary judgment seldom should be granted in discrimination cases where inferences are often the basis of the claim"); *Bassett v. City of Minneapolis*, 211 F.3d 1097 (8th Cir. 2000) (same).

Although "summary judgment must be used with caution in discrimination cases due to the fact-specific nature of each case, it nonetheless may be proper 'when a plaintiff fails to establish a factual dispute on an essential element of [the] case.'" *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1073-74 (2006) (quoting *Simpson v. Des Moines Water Works*, 425 F.3d 538, 542 (8th Cir. 2005)). No separate summary judgment standard exists for discrimination or retaliation cases and such cases are not immune from summary judgment. *Wallace*, 442 F.3d at 1118; *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999) ("[T]here is no 'discrimination case exception' to the application of Fed. R. Civ. P. 56, and it remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial.").

The ADEA protects individuals over forty and prohibits an employer from "fail[ing] or refus[ing] to hire or . . . discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). Generally speaking, under the *McDonnell Douglas* framework, a plaintiff may establish a prima facie case of age discrimination with a showing that (1) he is over forty; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) similarly-situated employees outside the class were treated more favorably. *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 523 (8th Cir. 2010). The Eighth Circuit Court of Appeals has "frequently stated that the last prong of the prima facie case is established by demonstrating the plaintiff was replaced by a substantially younger individual." *Id.*; s*ee, e.g.,* *McGinnis v. Union Pac. R.R.*, 496 F.3d 868, 875-76 (8th Cir.2007); *see also O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312-13 (1996) (prima facie case requires evidence adequate to create inference of discrimination, which cannot be drawn from the replacement of one worker with another worker insignificantly younger). "To establish a disparate treatment claim under the plain language of the ADEA, . . . a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Financial Services, Inc.*, — U.S. —, 129 S. Ct. 2343, 2350 (2009) (finding the ADEA does not authorize a mixed motives age discrimination claim).

An employee can prove that "her employer's articulated justification for an adverse employment action is pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. National Amer. Univ.*, 608 F.3d

1039, 1046 (8th Cir. 2010) (quoting *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 872 (8th Cir.2008). Pretext may be shown with evidence that "the employer's reason for the [adverse employment decision] has changed substantially over time." *Loeb v. Best Buy Co., Inc.*, 537 F.3d 867, 873 (8th Cir. 2008).

To show that one is disabled under federal law, an individual must show that she: (1) has a physical, sensory, or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1)(A)-(C). Under the "regarded as" prong, a person may be disabled under the ADA if, notwithstanding the absence of an actual disability, he is perceived or "regarded as" having an impairment that substantially limits a major life activity. *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999). Under the ADA, "the 'regarded as' provision was established to combat 'archaic attitudes, erroneous perceptions, and myths' working to the disadvantage of the disabled or perceived disabled." *Wisbey v. City of Lincoln,* 612 F.3d 667, 672-73 (8th Cir. 2010) (*quoting Brunko v. Mercy Hosp.,* 260 F.3d 939, 942 (8th Cir.2001)).

Working has been recognized as a major life activity. *See Breitkreutz v. Cambrex Charles City, Inc.,* 450 F.3d 780, 784 (8th Cir. 2006); *Nuzum v. Ozark Auto. Distrib.,* 432 F.3d 839, 844 (8th Cir. 2005); *Webner v. Titan Distrib., Inc.,* 267 F.3d 828, 834-35 (8th Cir. 2001); *Fjellestad v. Pizza Hut of Amer., Inc.,* 188 F.3d 944, 949 (8th Cir. 1999). "'In order to be regarded as disabled with respect to the major life activity of working, the employer must mistakenly believe that [an] actual impairment substantially limits the employee's ability to work.'" *Wisbey,* 612 F.3d at 672 (*quoting Chalfant v. Titan Distribution, Inc.,* 475 F.3d 982, 989 (8th Cir. 2007)). A substantial limitation on the major life activity of working

9

means that an individual must be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." 29 C.F.R. § 1630.2(j)(3)(I). The test is whether the defendant treated an employee adversely because it regarded the employee as having an impairment that substantially limits one or more major life activities. *Weber*, 186 F.3d at 915; *Kellogg*, 233 F.3d at 1089.

Under the law in effect at the time of the plaintiff's termination, the terms "major life activities" and "substantial limitation" were interpreted strictly to create a demanding standard for qualifying as disabled.³ *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 197 (2002) (abrogated by statute in Pub. L. 110-325 (2008)); *accord Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.*, 370 F.3d 763, 768 (8th Cir. 2004). Courts were to consider the nature, severity, duration, and long-term impact of the impairment when deciding whether an impairment substantially limits a major life activity. *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 685 (2003). The impairment also had to be of an extended or permanent duration. *Williams*, 534 U.S. at 198.

---

³The ADA Amendments Act of 2008 ("ADAAA") became effective January 1, 2009. *See* Pub. L. No. 110-325, § 8, 122 Stat. 3553, 3559 (codified at 29 U.S.C. § 705 note). The ADAAA amends the ADA in important respects, particularly with regard to the definition and construction of "disability" under the statute. The ADAAA broadens the definition of disability and rejects the strict standards that the Supreme Court adopted in *Williams*, 534 U.S. at 197. Also, although the general definition of "disability" retains largely the same language, the ADAAA adds a provision that addresses the intended scope of the "regarded as" prong of that definition. Pub. L. No. 110-325, § 4(a), 122 Stat. at 3555 (codified at 42 U.S.C. § 12102(3)(A)) (specifying that "[a]n individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity"); *see also Id.* (codified at 42 U.S.C. § 12102(3)(B)) ("[The 'regarded as' prong of § 12102(1) ] shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less."). Because the plaintiff was terminated prior to January 1, 2009, the ADAAA does not apply to her. *Nyrop v. Independent Sch. Dist. No. 11*, 616 F.3d 728, 734 (8th Cir. 2010).

II.  DISCUSSION

The evidence presented in support of and against the defendant's motion for summary judgment shows genuine issues of material fact exist in this case.  Resolution of the issues will involve credibility assessments.  With respect to the age discrimination claim, the plaintiff has shown that she was replaced by a younger individual and was singled out for discipline when other individuals were not.  These circumstances create an inference of age discrimination.  Determinations of motive, intent, and credibility are questions for a jury.

Although her foot pain may not qualify as an ADA qualifying disability, there is a genuine issue of fact with respect to whether Hastings was regarded as having a disabling impairment.  The ADAAA, if applicable, would provide additional support for the plaintiff's claims in this case, but even under pre-ADAAA case law, the plaintiff has provided sufficient evidence that she was perceived as disabled under the ADA to survive summary judgment.  The plaintiff has shown that the school district knew she had twice been diagnosed with cancer earlier and it had accommodated her need for time off for doctor's appointments and treatments.  She testified that it was only after she submitted a doctor's note regarding a standing restriction and told the Human Resources Director that she would need additional time off for appointments that her time sheets were investigated. Importantly, having been treated for cancer in the past, Hastings testified that she told Ms. Goings at the time she presented the doctor's note that she would need to take time off for additional appointments in the future.  Evidence suggests that school district employees knew or suspected that she was being treated for a recurrence of cancer.  There is evidence that the school district's leave policies were not uniformly enforced and that

others were treated differently for similar conduct. A reasonable juror could infer from this evidence that the employer perceived the plaintiff as having an impairment that substantially interfered with the major life activity of working. Further, a reasonable juror could conclude, depending on assessments of credibility, that the defendant's proffered reason for the plaintiff's termination was a pretext for discrimination.

Viewing the evidence in the light most favorable to the plaintiff, the defendant has not shown that it is entitled to judgment as a matter of law on the disability or age discrimination claims. There are issues of fact with respect to whether the School District's articulated reason for the plaintiff's termination was a pretext for either age or disability discrimination. Accordingly,

IT IS ORDERED:

1. Defendant's motion to strike the plaintiff's brief (Filing No. 28) is denied.

2. Defendant's motion for summary judgment (Filing No. 19) is denied.

DATED this 25th day of January, 2011.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.